IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RODRIGO GARCIA,           )
          Plaintiff,      )      12-CV-4891
                          )
v.                        )
                          )      Magistrate Judge Arlander Keys
COMPLETE BUILDING MAINTENANCE )
CO., and BILL ANDERSON,   )
          Defendants.     )
                          )
                          )

**Memorandum Opinion and Order**

Currently before the Court is Defendants' motion for
summary judgment [Dkt #48]. Plaintiff, Rodrigo Garcia ("Mr.
Garcia"), filed a five-count amended complaint against
Defendants, Bill Anderson ("Mr. Anderson") and Complete Building
Maintenance Co. ("Complete"), alleging that Defendants subjected
him to a racially hostile working environment; fired him because
of his race or because he complained of race harassment; and
fired him because he complained to law enforcement about another
foreman's criminal conduct. Defendants argue that the
undisputed facts demonstrate that Mr. Garcia's termination had
nothing to do with race or retaliation; instead, they argue he
was terminated on the basis of Complete's financial situation
and his lack of productivity as a foreman. For the reasons set
forth below, Defendants' motion is granted.

**Procedural History**

On July 13, 2012, Plaintiff filed his amended complaint against Defendants. [dkt #15]. Defendant Complete answered Mr. Garcia's Complaint and pled affirmative defenses, including, but not limited to, failure to state a claim upon which relief can be granted and that Plaintiff's employment was terminated for legitimate, non-discriminatory reasons. [dkt #16]. Defendant now moves this Court to enter an order granting summary judgment in its favor, arguing that Mr. Garcia cannot establish a genuine issue of material fact that a reasonable jury could resolve in his favor. (Defs.' Reply at p. 1). The parties have consented to proceed before this Court pursuant to 28 U.S.C. § 636(c)(1). [dkt #43].

**Factual Background**

The facts herein are drawn from the parties' Local Rule 56.1 submissions. [dkt #48, 55, 56, 61]. Each paragraph of the Local Rule 56.1 submissions must refer to the "affidavits, parts of the record, and other supporting materials" that substantiate the asserted facts. Local Rule 56.1(a)(3); *F.T.C. v. Bay Area Business Council, Inc.*, 423 F.3d 627, 633 (7th Cir. 2005). Most of the underlying facts of this case are agreed to and undisputed; it is noted when the parties disagree.

Complete is a commercial roofing company that employs its construction personnel on a seasonal basis; employees generally

apply for and receive unemployment during the winter months, and reapply for work at Complete in early spring. (Defendant's Local Rule 56.1 Filing ("Def. St."), ¶¶ 1-2). Mr. Garcia began his employment with Complete in 1989 as a laborer performing roofing work. (*Id.* at ¶ 13). Mr. Garcia is of Mexican national origin, or Hispanic. (Plaintiff's Response to Defendant's Local Rule 56.1 Filing ("Pl. Resp"), ¶4). Mr. Garcia enjoyed the financial stability that the work provided, and the seasonal layoff allowed him to return to his native Mexico once a year to be with his wife and children for a few months. (Plaintiff's Local Rule 56.1 Add'l Facts ("Pl. Add'l. St."), ¶32). Eventually, Mr. Garcia's wife and children immigrated to the United States, and his children – once they reached the age of eighteen – began working alongside him at Complete. (Pl. Add'l. St., ¶33).

After his foreman at the time, Al Berlanga, was unable to return to work due to illness, Mr. Garcia was promoted to the position of foreman by Bob Gianatasio in 1996. (Def. St., ¶14). Bill Anderson recommended the promotion along with Bob Majka. *Id.* When Mr. Garcia worked for Complete as a foreman, he supervised a crew of approximately eight to ten workers. (Pl. Add'l. St., ¶32). Mr. Garcia's personnel file reveals not a single instance of misconduct or discipline. (*Id*. at 33).

Mr. Garcia claims that Complete paid him less than similarly-situated non-Hispanic foremen. (Def. St., ¶9). Mr. Garcia admits, however, that he did not know whether the non-Hispanic foremen who were paid a higher wage were paid so because of longer tenure or not. *Id.* The rates of pay and years of service for foremen at the time of Mr. Garcia's termination were as follows:

| Foreman Name | Race | Hourly Rate (2008) | Hire Date | Promotion Date |
|---|---|---|---|---|
| Tab Rand | Caucasian | $39.90 | 8/18/1976 | 1981 |
| Marlin Thomas | African-Amer. | $35.00 | 4/26/1977 | 1985 |
| Robin Mildebrath | Caucasian | $32.70 | 6/30/1980 | 1983 |
| Francisco Herrera | Hispanic | $30.70 | 8/4/1980 | 1994 |
| Eusebio Llanes | Hispanic | $22.70 | 2/17/1984 | 2000 |
| Pedro Llanes | Hispanic | $28.30 | 5/11/1987 | 1994 |
| Martin Alvear | Hispanic | $22.60 | 3/21/1989 | 2003 |
| Rodrigo Garcia | Hispanic | $27.10 | 5/23/1989 | 1996 |

*Id.*

In 2008, Complete claims that, due to the economic recession and substantially reduced jobs and revenue, which jeopardized Complete's ability to remain in operation, only one crew received a bonus – Marlin Thomas' crew. (Def. St., ¶12). Mr. Thomas (African-American) and his crew (Hispanic) received a "bonus" because they traveled to and worked at an

out-of-state jobsite for an extended period of time. *Id.*  Mr. Garcia acknowledged the economic recession of 2008, and admits that he did not know whether other foremen received a bonus in 2008. *Id.*

Also in 2008, Mr. Gianatasio decided, along with Paul Smith, the majority owner of Complete, that due to reduced work orders and substantially reduced revenue, in order to remain in business, Complete management needed to urgently and substantially reduce their salaries.  (*Id.* at 16).  The reductions ranged from 80% (for Paul Smith); approximately 40% for Mr. Gianatasio, Mr. Anderson and Mr. Majka, to 50% for Russ Streeter and Richard Willix (Sales), 30% Paul Smith, Jr. (Service), and 12% for Thomas Sipolt (Estimator).  *Id.*  The pay decreases did not affect any of Complete's hourly employees and did not affect any Hispanic or Mexican employees.  *Id.*  At around the same time that it was determined that Complete management needed to accept substantial reductions in pay, it was also decided that it was necessary to reduce the number of production crews from seven to six to ensure that the crews employed by Complete had enough work. (*Id.* at 17).

Mr. Gianatasio made the decision that Mr. Garcia was the foreman who would not be rehired in the spring of 2009 because he determined that Mr. Garcia was the least productive foreman based upon his review of weekly foremen reports over the years

5

and upon his review of multi-year summary reports of foremen productivity ("Foreman Productivity Reports"). (Def. St., ¶20) It is noted, however, that Mr. Garcia denies that Mr. Gianatasio determined that he should be fired because he was the least productive foreman. (Pl. Resp., ¶20). Mr. Garcia contends that Mr. Gianatasio "repeatedly told the EEOC and IDHR that it terminated Garcia's employment because (1) he did not accept constructive criticism from supervisors and (2) he was the least skilled foreman." *Id.*

Mr. Garcia claims that, from at least the early 1990s through December 2008, Bill Anderson frequently called Mr. Garcia and other workers "wetbacks," "beaners," "stupid Mexicans," "motherfuckers," "pigs," and "animals," told workers that they had no brains, threatened to report workers to immigration authorities, said that he was a born racist, and made other racially offensive comments. (Pl. Add'l. St., ¶1). Moreover, Mr. Garcia argues that Mr. Anderson used this racially offensive language at least two times per week during the time that Mr. Garcia worked for Complete, and did not make these statements to non-Mexican foreman. *Id.*

Complete disputes these facts, arguing that Mr. Garcia "offered numerous affidavits purporting to corroborate his extraordinary charges, but upon deposition of the affiants, the statements in the affidavits were found to be largely

inconsistent. (Defendant's Response to Plaintiff's Local Rule
56.1 Filing ("Def. Resp"), ¶1).

Lastly, Mr. Garcia claims that Complete retaliated against
him after he made complaints to management known about another
foreman, Robin Mildebrath (white). Mr. Garcia states that Mr.
Mildebrath was addicted to cocaine, and that from at least the
early 2000s until the end of 2004, Mr. Mildebrath used racist
language around workers, spoke to workers about sex, exposed his
penis to workers, and touched workers on their butts. (Pl.
Add'l. St., ¶3). Mr. Garcia reported Mr. Mildebrath's
misconduct to Complete management, but claims Complete took no
corrective action thereafter. (*Id*. at ¶4).

At the outset, Complete objects to any use of statements or
acts regarding Mr. Mildebrath, or that occurred in his presence,
due to the Illinois Dead Man's Act, 735 ILCS 5/8-201, which
prevents the introduction of a deceased person's statements at a
civil trial. (Def.'s Add'l. St., ¶3). Moreover, Complete
challenges the relevancy of these facts to the claims asserted
in this matter. *Id*. Next, Complete denies each of Mr. Garcia's
claims, including that it was aware of Mr. Mildebrath's
addiction issues, that Mr. Mildebrath used inappropriate
language or made inappropriate gestures, and that Complete took
no corrective action on Mr. Garcia's September 2008 complaints

of Mr. Mildebrath. *Id.* Complete acknowledges that Mr. Garcia has filed sexual harassment charges in a complaint that is currently pending before the Illinois Human Rights Commission. *Id.*

On February 9, 2005, a DuPage County grand jury indicted Mr. Mildebrath for, among other things, Burglary and Attempted Aggravated Criminal Sexual Assault. (Pl. Add'l. St., ¶5). Mr. Mildebrath was incarcerated from early 2005 until August 2008, and upon his release, Mr. Mildebrath returned to work at Complete Building Maintenance, and Complete placed Mr. Mildebrath on Mr. Garcia's work crew. (*Id.* at ¶7). Complete does not dispute these facts, however, it objects on the grounds of relevancy, and adds that Complete previously allowed a Hispanic employee to return to work following a prison term, as well. (Def.'s Add'l. St., ¶7).

On September 7, 2008, Mr. Garcia claims that, the Parole Division placed Mr. Mildebrath on house arrest, and, in response, Complete removed Mr. Mildebrath from Mr. Garcia's crew. (Pl. Add'l. St., ¶13). Mr. Garcia argues that Complete suspected that he reported Mr. Mildebrath to the Parole Division, and that this attributed to Complete's decision to fire him. *Id.* Complete asserts that the sole reason for Mr. Mildebrath's house arrest was Plaintiff's report to authorities,

8

but denies that Mr. Mildebrath's change in placement was in response to his house arrest.  (Def.'s Add'l. St., ¶13).

## Standard of Review

Summary judgment is proper if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A genuine issue of material fact exists if the "evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Though this standard places the initial burden on the moving party, once it has met this burden of production, the non-moving party "may not rely merely on allegations or denials in its own pleading," but instead must "set out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e).  When deciding whether summary judgment is proper, the Court must accept the non-moving party's evidence as true and draw all inferences in favor of that party, here the Plaintiff, Mr. Garcia.  *See Anderson*, 477 U.S. at 255.

In order to successfully oppose a motion for summary judgment, the non-moving party must do more than raise a metaphysical doubt as to the material facts.  *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574,

586. (1986). Rather, it must come forward with specific facts showing that there is a genuine issue for trial. *Id.* at 587. The non-moving party must offer more than a mere scintilla of evidence to survive summary judgment, and conclusory allegations are insufficient to defeat a motion for summary judgment. *Keri v. Bd. of Trustees of Purdue Univ*., 458 F. 3d 620, 628 (7th Cir. 2006). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986).

## Analysis

Complete asserts that summary judgment in this case is proper because all of the material undisputed facts, pleadings, depositions, written discovery, and affidavits establish that Mr. Garcia was not terminated on the basis of his national origin or race, nor was Mr. Garcia racially harassed or retaliated against for his complaints of sexual harassment. Instead, Complete argues, the undisputed material facts demonstrate that Mr. Garcia was terminated on the basis of Complete's financial constraints and his lack of productivity. Mr. Garcia filed his amended complaint against Complete alleging the following five claims: (1) race harassment under 42 U.S.C.

1981 (Section 1981) (Count I); (2) race discrimination  under
Section 1981 (Count  II); (3) retaliation for alleged complaints
of race discrimination under Section 1981 (Count III); (4) a
claim under the Illinois Whistleblower Act  alleging
retaliation for his complaints of alleged sexual harassment
(Count IV); and (5) Illinois common law retaliatory discharge
(Count V).  Complete seeks summary judgment as to all counts
of Mr. Garcia's amended complaint.  The Court will analyze
each count in turn.

## I.  Race Harassment Under Section 1981

Mr. Garcia argues that he has offered a remarkable amount
of evidence to prove to a jury that he was racially harassed
over a twenty-year timeframe. (Pl.'s Resp. at p. 19).  He avers
that, from "at least the early 1990s through December 2008, Bill
Anderson frequently called Mr. Garcia and other workers
"wetbacks," "beaners," "stupid Mexicans," "motherfuckers,"
"pigs," and "animals," told workers that they had no brains,
threatened to report workers to immigration authorities, said
that he was a born racist, and made other racially offensive
comments." (Pl.'s Resp. at p. 19).  Additionally, Mr. Garcia has
offered testimony of ten other current and former Complete
employees who corroborate that Mr. Anderson frequently used
racist language when addressing Mr. Garcia's work crew. *Id.*

However, aside from making the claim, Mr. Garcia spends very little space arguing this count, seemingly relying on the claims in and of themselves, as well as the submitted affidavits from his crew members, to belay the point. Complete argues that the affidavits Mr. Garcia provided consisted of family and friends, none of whom were terminated, but almost none of whom returned to Complete after Mr. Garcia, their father/relative/friend, was terminated. (Def.'s Reply at p. 18). Additionally, Complete argues that once deposed, "(at least until Plaintiff's counsel showed the witnesses the affidavits), the testimony varied and was substantially inconsistent from the affidavits. In fact, Mr. Garcia's sons could not even decide in their depositions whether they had been terminated or not." *Id.*

The Court finds several undisputed facts to be inconsistent with Mr. Garcia's claim of a hostile work environment, including that: Plaintiff referred each of his children, as soon as they turned 18 years old, as well as several friends, to work at Complete under the same supervisor and alongside the same employee (Mr. Mildebrath) whom he claimed subjected him to harassment "sufficiently severe or pervasive to interfere with an employee's ability to perform his assigned duties." (Def.'s Reply at p. 18). There is no dispute that Mr. Garcia never so

much as mentioned the "severe" or "pervasive" harassment to his children and friends. *Id.*

It is well settled that, in considering a harassment claim, the offensiveness of the work environment is evaluated from both the subjective standpoint of the plaintiff, as well as the objective standpoint of a reasonable person in the plaintiff's position. *Faragher v. City of Boca Raton,* 524 U.S. 775, 787, 118 S.Ct. 2275 (1998). The fact that Mr. Garcia would have recommended one child or one friend to work at Complete while he was allegedly enduring such alleged harassment would be, in and of itself, irreconcilable with his establishment of a subjectively hostile work environment. As Defendants point out, the fact that Plaintiff would recommend all of his adult male children to work at Complete, with the same people who allegedly subjected him to such egregious harassment, without even warning of the alleged harassment, renders a decision in Mr. Garcia's favor on his harassment claim difficult.

These facts, which are undisputed, preclude a reasonable jury from finding in Mr. Garcia's favor on his hostile work environment claim. Accordingly, the Court finds summary judgment appropriate as to Count I.

## II. Race Discrimination Under Section 1981

Mr. Garcia argues that he has offered sufficient evidence for a jury to conclude that he was fired because of his race. Mr. Garcia proceeds pursuant to the indirect, burden-shifting method of analysis in support of his race discrimination claim. In order to establish a *prima facie* case under the indirect method, Mr. Garcia must show that (1) he was a member of a protected class; (2) he was performing his job satisfactorily; (3) he suffered an adverse employment action; and (4) that Complete treated similarly situated individuals outside Mr. Garcia's protected class more favorably. *See Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 394 (7th Cir. 2010). If Mr. Garcia satisfies these elements, thus giving rise to an inference of discrimination, the burden would shift to Complete to identify a legitimate, nondiscriminatory reason for the action taken. *Stockwell v. City of Harvey*, 597 F.3d 895, 901 (7th Cir. 2010). If Complete can proffer a nondiscriminatory reason for terminating Mr. Garcia, summary judgment would then only be erroneous if Mr. Garcia produced evidence that the proffered reason was a pretext for racial discrimination. *Id*.

Complete contends that, regardless of whether Mr. Garcia employs the direct or indirect method of analysis, a jury could not reasonably find that a company who employed nearly all Mexican employees and foremen terminated Mr. Garcia on account of his race. Moreover, Complete argues that Mr. Garcia's complaint never pled that he was terminated on account of race, thus justifying dismissal on that ground alone. Although the complaint may have not been clear on the pleading, the Court will analyze the merits.

As to the first element of the four-part standard, Mr. Garcia is Mexican, and thus a member of a protected class. Second, Complete concedes that, although it considered him the weakest of its foreman, "but for the recession, [Mr. Garcia's] employment was sufficiently satisfactory so that his employment would not have been terminated." (Defs.' Reply at p. 13). Therefore, the Court finds that the second element, that he was performing his job satisfactorily, is met as well. There is no dispute that the third element is met, as Mr. Garcia suffered an adverse employment action by being terminated. The fourth element is wherein the dispute lies, whether Complete treated similarly situated individuals who were not Mexican more favorably.

It is undisputed that, at the time of Mr. Garcia's termination, there were seven working roof production foremen, five of whom were Mexican. (Defs.' Reply at p. 14). Additionally, it is undisputed that all foremen hired since 1985 were Mexican, and that each of the non-Hispanic foremen was at least 10 years more senior than Mr. *Id.* Lastly, it is also undisputed that the foremen productivity reports reviewed by management all showed Mr. Garcia to be the least productive foreman. *Id.* Mr. Garcia contends that the fourth element is met because Mr. Mildebrath was treated more favorably. However, at the time of Mr. Garcia's termination, and insofar as Mr. Mildebrath's return to Complete following his release from prison, Mr. Mildebrath had not worked as a foreman and had no crew. Therefore, the Court cannot agree that Mr. Mildebrath was similarly situated to Mr. Garcia. As explained by the Seventh Circuit in *Chattic v. Illinois Dep't of Corrections*, 2013 WL 6172517 (7th Cir. 2013), in evaluating whether comparable coworkers are "similarly situated," courts will, "consider whether the employees held the same position, were subject to and performed up to the same standards, and reported to the same supervisor as the plaintiff." *Id.* at *1. In *Chattic*, the Seventh Circuit, affirming summary judgment in favor of the employer, rejected the plaintiff's proffered comparables where the comparables

16

had fewer absences. *Id*. The court found that the plaintiff had also failed to present evidence of pretext where the employer terminated the plaintiff on account of absenteeism, and where the retained employees had fewer absences. *Id*.

Herein, the sole comparable proffered by Mr. Garcia is an individual who had been a foreman at Complete for over ten years longer than he, and had most recently not had a crew for four years. The Court finds no relevance in Mr. Garcia's argument regarding Mr. Mildebrath's absenteeism, which occurred four years prior to the timeframe of Mr. Garcia's termination. Lastly, the Court finds that Mr. Garcia has failed to present any evidence of pretext, and that the non-discriminatory reason for Mr. Garcia's termination - productivity- was indeed the honest reason. *See Smizer v. Community Mennoite Early Learning Center,* 538 Fed.Appx 711(7th Cir. 2013) ("Even if the Center's reason was not a good one, that is irrelevant if the Center honestly believed that the plaintiff wrote the post [which represented the stated reason for his termination].").

As a final argument to bolster Mr. Garcia's race discrimination claim, he alleges that he and other Mexican foremen were paid substantially lower end-of-the-year bonuses than similarly situated non-Mexican foremen. (Pl.'s Resp. at p. 16). Mr. Garcia asserts that the bonus figures and the

productivity data from 2005-2007 demonstrate that
"historically, there was little change from year-to-year in
terms of who received the highest bonuses.  In almost every
year, Marlin Thomas (black) and Francisco Herrera (Mexican),
the two foremen with the best productivity figures, received
the highest bonuses.  Then, Tab Rand (white), one of the
weakest foremen according to productivity figures, received a
year-end bonus just shy of Thomas's and Hernandez's bonus and
often twice as large as the bonuses of Mexican foreman Garcia,
Alvear, P. Llanes, and E. Llanes." (*Id*. at 17).

The Court finds it difficult to reconcile Mr. Garcia's
admission, that for several years, a Mexican foreman received
one of the highest bonuses, with his allegation that Complete
discriminates on the basis of bonus payments against
Mexican/Hispanic foremen.  Plaintiff provides a chart
contrasting the bonuses foremen received from 2005-2007, with
their respective productivity data, and argues that there is a
"stark difference in year-end pay." *Id.*  However, Mr.
Gianatasio's testimony explained that bonuses were not based on
productivity alone, but also considered other factors, such as
skill and travel to distant worksites.  (Defs.' Reply at p.
17).

Although Mr. Garcia disputes that the bonuses were based
upon productivity, skill and travel, per se, he concedes that

they were based on more than just productivity, explaining that "[a]ctually, the end-of-year bonus was based on performance during the year…[p]erformance encompassed safety, productivity, quality of work, and the types of jobs that the foreman received." Pl.' Resp. to Defs.' L.R. 56.1 SOF ¶10). The Court finds that, regardless of whether it follows Mr. Gianatasio or Mr. Garcia's definition of what a bonus encompassed, there is no evidence to support Mr. Garcia's bonus disparity claim. Accordingly, the Court finds summary judgment appropriate as to Count II.

## III. Retaliation for Race discrimination Under Section 1981

In order to defeat Defendants' motion for summary judgment on Count III, Mr. Garcia must offer evidence from which a jury could reasonably conclude that Complete fired him because he complained about race harassment, or because he complained to law enforcement about Mr. Mildebrath's criminal acts. Under the direct method, Mr. Garcia must show, through either direct or circumstantial evidence that (1) he engaged in statutorily protected activity; (2) he suffered an adverse action taken by Complete; and (3) there was a causal connection between the two. *See Egan v. Freedom Bank*, 659 F.3d 639, 642 (7th Cir. 2011).

Complete does not dispute elements one or two, yet argues that, with regard to the third element, no reasonable jury could

conclude that there was a causal connection between Mr. Garcia's complaints of race harassment or criminal conduct and his termination. Indeed, the Court finds that Mr. Garcia leaves unaddressed several undisputed facts regarding Complete's employee demographics and his own work history, which could preclude a finding by a reasonable jury in Mr. Garcia's favor regarding his retaliation claims, including:

>-Mr. Garcia was promoted to the position of Foreman after he had allegedly complained about Mr. Anderson and Mr. Mildebrath for at least six years [Plaintiffs Amended Complaint, ¶6];
>
>-Mr. Gianatasio, Complete's President, the person to whom Mr. Garcia allegedly complained about Mr. Mildebrath prior to his promotion to foreman, approved Mr. Garcia's promotion from laborer to foreman [Id. at ¶¶32,40];
>
>-the vast majority of Complete's employees are Mexican [Id. at ¶26];
>
>-the last six production foremen hired by Complete (since 1985) were Mexican [Id. at ¶15]; and
>
>-Mr. Garcia had been a foreman for 10 years less than the only two non-Hispanic foremen working as foreman at the time of his termination [Id. at ¶9];

Mr. Garcia then employs a circumstantial evidence argument to proffer that, given Complete's allegedly more favorable treatment of Mr. Mildebrath, a jury reasonably could conclude that Mr. Garcia was not fired for productivity-related reasons, "but because Complete was upset about Mr. Garcia's complaints of race discrimination or his complaints to law enforcement. *See Massey v. Johnson*, 457 F.3d 711, 717 (7th Cir. 2006) ("Circumstantial proof, such as the timing of events or the disparate treatment of similar individuals, may be sufficient to establish the defendant's retaliatory motive."); *Zitzka v. Vill. of Westmont*, 743 F. Supp. 2d 887, 919 (N.D. Ill. 2010) ("Circumstantial evidence of retaliatory motive is more common, and may include the timing of events or the disparate treatment of similar individuals.")." (Pl.'s Resp. at p. 9).

The Court is unpersuaded by Mr. Garcia's circumstantial evidence argument, and finds that Complete had a legitimate nondiscriminatory reason for Mr. Garcia's termination. Complete maintains that, due to the economic downturn, it undertook drastic measures to reduce costs, which were necessary to avoid a financial crisis. (Def.'s Reply at p. 4). Significantly, this is not a fact disputed by Mr. Garcia, which the Court finds telling. Mr. Gianatasio made the decision to terminate Mr. Garcia, "because of the economic

condition that the company was in." *Id.* And Mr. Gianatasio testified that he, "wish[ed] Rodrigo [Mr. Garcia] was still working at Complete" because that would be an indication that the company was healthier. *Id.* This is also not contested by Mr. Garcia.

The Court finds that, but for the downturn in the economy, Mr. Gianatasio made clear that Mr. Garcia would not have been terminated. The evidence of the poor economy and need to reduce one crew is not disputed. In addition to salary cuts, Complete also made the decision to eliminate one full crew, by terminating one foreman. *Id.* Furthermore, Mr. Gianatasio testified, and Mr. Garcia does not dispute, that he selected Mr. Garcia for termination based upon the foreman productivity data and because his efficiency numbers, or overruns, were the worst. *Id.* The Court finds that such undisputed facts dictate judgment in favor of Complete on Mr. Garcia's retaliation claims. Accordingly, the Court finds summary judgment appropriate as to Count III.

## IV. Illinois Claim of Retaliation for Complaints of Sexual Harassment and Illinois Common Law Retaliatory Discharge

Mr. Garcia has a retaliation claim currently pending, and stayed, before the Illinois Human Rights Commission under the Illinois Human Rights Act ("IHRA") with nearly identical facts

22

to those alleged by him in support of Illinois Common Law
and Illinois Whistleblower Act ("IWA") claims. Complete argues
that Counts IV and V of Mr. Garcia's amended complaint,
retaliation under the Illinois Whistleblower Act, are
abrogated/preempted by the IHRA, which provides the sole remedy
for any claim that is "inextricably linked" to an alleged
violation of an employee's civil rights under the IHRA. *Giese
v. Phoenix Co. of Chicago, Inc.,* 159 Ill. 2d 507, 516 (1994).

In Counts IV and V of his amended complaint, Mr. Garcia
alleges that Complete terminated him in retaliation for his
alleged reporting of Mr. Mildebrath's harassment to the Lisle
Police Department. The Court agrees that Counts IV and V of
Mr. Garcia's complaint are based upon claims of retaliation
which are inextricably linked to duties created by the IHRA,
and are therefore preempted. Mr. Garcia attempts to refute the
preemption argument, relying upon *Mendez v. Perla Dental*, 646
F. 3d 420 (7th Cir. 2011). In *Mendez,* the plaintiff complained
to the police about an incident when she was pushed to the floor
and injured her back. The employer agreed that, "at the time
the complaint was filed, the district court had subject matter
jurisdiction over the Illinois retaliatory discharge claim
because the claim had an *independent* basis." (emphasis added)
*Id.*

In the instant case, the Court finds that the facts alleged to support the IWA claim are materially identical to those alleged in support of the IHRA claim, including Mr. Garcia's allegation that he was terminated on account of his complaints to the police regarding Mr. Mildebrath's sexual harassment. Mr. Garcia's common law retaliatory discharge and IWA claim are "inextricably intertwined" with his claim currently pending before the IHRC and thus must be dismissed as preempted under the IHRA. Accordingly, the Court finds summary judgment appropriate as to Counts IV and V.

Because Mr. Garcia's amended complaint fails on each count, Complete is entitled to summary judgment.

**Conclusion**

Defendant Complete's motion for summary judgment [dkt #48] is granted.

Date: February 14, 2014          E N T E R E D:

_Arlander Keys_

---------------------------------
MAGISTRATE JUDGE ARLANDER KEYS
UNITED STATES DISTRICT COURT